**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNIKEN U. DAVENPORT, | : | |
| Plaintiff | : | No. 1:20-cv-01700 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| CAPIO PARTNERS LLC, et al, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the Court is Defendant Capio Partners, LLC ("Defendant")'s motion to

dismiss (Doc. No. 5) Plaintiff Anniken U. Davenport ("Plaintiff")'s complaint (Doc. No. 1)

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Also pending is Plaintiff's motion for

leave to file a supplemental brief in opposition to Defendant's motion to dismiss.  (Doc. No. 10.)

Having been fully briefed (Doc. Nos. 7-9, 11, 15-17), the parties' motions are ripe for

disposition.  For the reasons that follow, the Court will grant both motions.

## I.    BACKGROUND[1]

Plaintiff commenced this action on September 18, 2019, asserting claims for violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and for common law negligence.

(Doc. No. 1 at 42-46.)  According to the complaint, Defendant is a debt collector and a furnisher

of consumer credit information to credit reporting agencies ("CRAs").  (Id. ¶¶ 5, 42, 220, 225.)

Several years ago, Plaintiff sought medical services from a hospital for which she was charged

under two medical billing accounts (the "Accounts").  (Id. ¶¶ 43-44.)  Plaintiff maintains that her

---

[1]  This background is drawn from the allegations in Plaintiff's complaint, which the Court has
accepted as true, as well as exhibits attached to her complaint and matters of public record.  See
Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.2004); see also Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

medical insurance provider paid the bills in full satisfaction of the Accounts.  (Id. ¶ 44.)

In late 2017, Defendant allegedly began to collect on the Accounts and negatively reported them to CRAs.  (Id. ¶¶ 46, 105.)  More specifically, Plaintiff alleges that Defendant reported, as "unpaid collection" debt, both Accounts to the Experian CRA, and one Account to the TransUnion CRA.  (Id. ¶¶ 48-49, 104, 129.)  Plaintiff claims that she did not discover Defendant's negative reporting of the Accounts until she obtained her September 2019 credit reports from the Experian and TransUnion CRAs.  (Id. ¶¶ 48-49.)  Those reports, annexed as exhibits to the complaint, reflect "tradelines"[2] for the Accounts.  (Doc. No. 1-2.)  The tradelines in both reports indicate the original creditor of the Accounts (the hospital), the debt collector that reported them as medical debt (Defendant), and the debt purportedly owed ($2,145 and $387).  (Id.)  As Plaintiff notes, the tradelines also indicate that Defendant reported the Accounts as medical collections debt beginning in September 2017 (Doc. No. 1-2 at 1, 3), reported the Accounts as closed in February and March 2018 (id.), and "did not actively credit report [the Accounts at] any point after mid-2018," which is when the TransUnion report was "last updated" (Doc. No. 1 ¶ 7; Doc. No. 1-2 at 1, 3).

Plaintiff alleges that when Defendant reported the Accounts as closed in early 2018, it did so upon receiving notice from the hospital that Plaintiff's Accounts had been "paid by insurance."  (Doc. No. 1 ¶¶ 105, 107-108, 110-111.)  She further alleges that, at that time, Defendant knew or should have known to identify the Accounts as "paid by insurance" using "the Metro 2 special comment code of 'BP'" pursuant to a 2015 settlement agreement

---

[2] "A tradeline is information about a consumer account that is sent, generally on a regular basis, to a [CRA].  Tradelines contain data such as account balance, payment history, and status of the account."  See Consumer Financial Protection Bureau, Market Snapshot: Third-Party Debt Collections Tradeline Reporting (July 18, 2019), https://www.consumerfinance.gov/data-research/research-reports/market-snapshot-third-party-debt-collections-tradeline-reporting/.

("Settlement Agreement" or "Agreement") between thirty-one (31) state attorneys general and the three national CRAs.[3]  (Id. ¶¶ 9, 12-14, 106, 108-109, 120-121, 208.)  Rather than using the BP code to report the Accounts as paid by insurance, Defendant allegedly informed Experian that the Accounts were "paid collection" debt, i.e., accounts that were delinquent, placed in collection, and satisfied upon Plaintiff's payment thereof.  (Id. ¶¶ 38, 48-50, 104.)

Plaintiff points to the tradelines in her 2019 credit reports, which reflect that that Defendant, upon closing the Accounts in early 2018, informed Experian that the Accounts were "Paid, Closed," using special comment code "CLS" for "[c]losed," and informed TransUnion that the one Account reported to it was "[p]aid in [f]ull," with a corresponding notation, "PAID COLLECTION."  (Id. at 1, 3.)  The tradelines were listed as "adverse" accounts that "may be considered negative," according to Plaintiff.  (Doc. No. 1 ¶¶ 4.)  In Plaintiff's estimation, had

---

[3]  The Settlement Agreement requires the CRAs to take measures aimed at reducing credit reporting inaccuracies.  (Doc. No. 1-2 at 4-7.)  The Agreement marked the retirement of the "Metro 1 data reporting format" in favor of the now-operative Metro 2 standard, which was to be promptly implemented, including its BP code.  (Id. at 6-7.)  According to the Agreement, a full version of which is annexed as an exhibit to Defendant's motion (Doc. No. 5-2), the Metro standards are "file formats used by furnishers to submit data to the CRAs" (id. at 10 n.13).  The Agreement provides, in relevant part, as follows:

> The CRAs shall instruct Collection Furnishers on the use of the Metro 2 special comment codes of "BP" for debt identified as "paid by insurance" and "AB" for debt identified as "being paid by insurance" and instruct Collection Furnishers to remove or suppress medical accounts reported as "paid by insurance" or "being paid by insurance" if such accounts were in fact paid in full by the consumer's insurance carrier and were not the obligation of the consumer.

> The CRAs shall implement a process designed to remove or suppress known medical collections furnished by Collection Furnishers from files within the CRAs' respective credit reporting databases when such debt is reported either as having been paid in full by insurance or as being paid by insurance.

(Id. at 14; Doc. No. 1-2 at 6.)

Defendant adopted the proper policies and procedures concerning the use of special comment code "BP," Defendant would never have misidentified the Accounts as paid collection debt. (Doc. No. 1 ¶¶ 107, 110-111.)

In December 2018, Plaintiff alleges that she was "declined credit for a vehicle" due to the tradelines appearance on her credit reports, in response to which she obtained her September 2019 credit reports several months later.  (Id. ¶¶ 76-78.)   On November 12, 2019, Plaintiff sent dispute letters to Experian and TransUnion (id. ¶¶ 175-176), as well as to Defendant (Doc No. 1-2 at 8-9).  Defendant responded on November 21, 2019, writing that the Accounts had been "placed with [it] in error" and that the CRAs would "be notified of th[e] change in [] account status."  (Doc. Nos. 1 ¶¶ 101, 103, 1-2 at 13-14.)  Plaintiff alleges that on November 21, 2019, Defendant deleted the tradelines for the Accounts "in order to avoid investigating its policies and procedures that have not been adopted to report the required" special comment code of BP. (Doc. No. 1 ¶¶ 37, 70, 192.)

Based on these allegations, Plaintiff asserts that Defendant violated §§ 1692e and 1692f of the FDCPA by falsely reporting the Accounts as paid medical collection debt, failing to correct the tradelines to reflect that the Accounts had been paid by insurance (and, relatedly, by continuing to report the tradelines as paid collection debt), and deleting the tradelines without identifying the Accounts as having been paid by insurance using code "BP."  (Id. ¶¶ 7-8, 50-53, 106-107, 109-111, 222-223.)  Plaintiff further asserts that Defendant willfully violated §§ 1681n and 1681o of FCRA by failing to: (1) conduct a reasonable investigation in response to her disputes; (2) provide complete and accurate information to the CRAs; (3) "provide accurate information to the [CRAs] that [Defendant] knew and had reasonable cause to believe was

inaccurate"; (4) inform the CRAs of the dates of first delinquencies ("DOFD") of the Accounts;[4] (5) "employ and follow reasonable procedures to assure maximum possible accuracy of the information provided to the [CRAs]"; and (5) "comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1861s-2(b)."  (Id. ¶ 228.)  Plaintiff alleges that some of this conduct "led to [Defendant's] failure to conduct a proper and reasonable investigation."  (Id.)  Finally, based on the same allegations, Plaintiff asserts various claims for common law negligence.  (Id. ¶¶ 231-233.)  As relief, Plaintiff seeks actual, punitive, and statutory damages and attorney fees and costs.  (Id. at 43-46.)

Defendant filed its motion to dismiss on October 12, 2020 (Doc. No. 5), and filed its brief in support thereof on October 16, 2020 (Doc. No. 7).  The parties briefed Defendant's motion the same month.  (Doc. Nos. 8-9.)  In November 2020, the parties filed two additional motions: Plaintiff filed the instant motion for leave to file a supplemental brief (Doc. No. 10), and Defendant filed a motion to stay discovery pending the Court's disposition of its motion to dismiss (Doc. No. 14).  After those motions were fully briefed (Doc. Nos.  11, 15-18), the Court granted (Doc. No. 19) Defendant's motion (Doc. No. 14) for a stay of discovery.   Defendant's motion to dismiss (Doc. No. 5) and Plaintiff's motion for leave to file a supplemental brief (Doc. No. 10) are ripe for disposition (Doc. Nos. 7-9, 10-11, 18).  At the outset, because the Court is granting Plaintiff's motion for leave to file a supplemental brief, the Court notes that it has considered Plaintiff's proposed supplemental brief (Doc. No. 10-1) in deciding Defendant's

---

[4] Regarding the DOFD concerning the Accounts, Plaintiff notes that the Settlement Agreement requires that CRAs "prevent the reporting and display of medical debt identified and furnished by Collection Furnishers when the [DOFD] is less than one hundred and eighty (180) days prior to the date that the account is reported to the CRAs."  (Doc. No. 5-2 at 14; Doc. No. 1 ¶¶ 117, 154.)  She alleges, inter alia, that Defendant violated § 1681s-2(a)(5) of FCRA by failing to timely report the DOFD of the Accounts to Experian.  (Doc. No. 1 ¶¶ 165-166.)

motion to dismiss.  As Defendant notes (Doc. No. 11), Plaintiff's supplemental brief includes an assortment of arguments that she has already raised in her briefing and complaint, arguments that she could have raised in her briefing, and arguments based on a now-settled, unrelated action brought by the Attorney General of New Mexico against Defendant (Doc. No. 10-1).  The Court will nevertheless grant Plaintiff's motion (Doc. No. 10) out of an abundance of caution.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121,

130 (3d Cir. 2010) (citation and quotation marks omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

## III.    DISCUSSION

Initially, the Court notes that Plaintiff's forty-seven (47) page complaint contains several redundant variations of intertwined factual allegations and legal arguments (Doc. No. 1), making it difficult to discern the precise contours of her claims.  By her own admission, Plaintiff has alleged extraneous facts and asserted legal claims that she herself notes do not give rise to relief, all to "to provide context to the magnitude" of Defendant's improper conduct.  (Doc. No.  8 at 12-3.)  Nevertheless, to ensure for a full and thorough evaluation of the sufficiency of her claims, the Court has construed the causes of actions she presses as broadly as her allegations and the statutory provisions she invokes will permit.   Having considered the parties' arguments and the record before it, the Court finds that Plaintiff's FDCPA claims are untimely, her FCRA claims do not state a claim for relief, and her negligence claims do not present any extraordinary circumstances that would warrant the Court's exercise of supplemental jurisdiction over them.

### A.    Plaintiff's FDCPA Claims

The FDCPA was enacted to "protect consumers from unfair, abusive, and deceptive debt collection practices."  See Staub v. Harris, 626 F.2d 275, 276-77 (3d Cir.1980). The statute provides for a private right of action against a debt collector for violations thereof.  See 15 U.S.C. § 1692k(a).  To state a cause of action of action under the FDCPA, a plaintiff must allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  See Douglass v.

Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014).  Relevant here, the FDCPA prohibits

the "use [of] any false, deceptive, or misleading representation or means in connection with the

collection of any debt," see 15 U.S.C. § 1692e,[5] and also proscribes the "use [of] unfair or

unconscionable means to collect or attempt to collect any debt," see id. § 1692f.  Each

"violation[] of the FDCPA" triggers a new and separate limitations period for that particular

violation.  See Solomon v. HSBC Mortg. Corp., 395 F. App'x 494, 497 (10th Cir. 2010).

     In moving to dismiss Plaintiff's FDCPA claims, Defendant argues that Plaintiff's claims

are time-barred and fail to state a claim upon which relief can be granted.  (Doc. No. 7 at 4-7.)

As discussed below, because the Court agrees with Defendant that Plaintiff's FDCPA claims are

time-barred under 15 U.S.C. § 1692k(d) (permitting that such an action "may be brought . . .

within one year from the date on which the violation occurs"), the Court's analysis concerning

the statute of limitations is dispositive as to those claims.

     It is well-established that, "absent the application of an equitable doctrine, the [one-year]

statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA

violation occurs, not the date on which the violation is discovered."  See Rotkiske v. Klemm, 140

S. Ct. 355, 358 (2019); see id. at 360 (noting that "the language [in § 1692k(d)] unambiguously

---

[5] Sections 1692e and 1692f both provide lists of non-exhaustive examples of conduct that violates the respective sections.  See 15 U.S.C. §§ 1692e(1)-(16), 1692f(1)-(8).  Plaintiff asserts that Defendant violated § 1692e generally and, more specifically, by falsely representing the "character, amount, or legal status of any debt" (in violation of subsection (2)(A)), communicating credit information "which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (in violation of subsection (8)), and using "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (in violation of subsection (10)).  See § 1692e(2)(A), (8), (10); (Doc. No. 1 ¶¶ 7, 23-24, 52, 222).  Plaintiff asserts that Defendant violated § 1692f generally and, more specifically, by collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  See § 1692f(1); (Doc. No. 1 ¶¶ 7, 25, 53-54, 223.)

sets the date of the violation as the event that starts the one-year limitations period"). A violation of the FDCPA is marked by a "discrete act," an "identifiable incident wherein the plaintiff's rights under the [FDCPA] were violated." See Huertas v. U.S. Dep't of Educ., No. 08-cv-3959, 2009 WL 3165442, at *3 (D.N.J. Sept. 28, 2009). Courts have accordingly held that an FDCPA violation based on false credit reporting occurs on the date on which the debt collector reports the debt to a CRA. See, e.g., Hernandez v. Specialized Loan Servicing LLC, No. 19-55163, 2020 WL 6743105, at *1 (9th Cir. Nov. 17, 2020) (affirming the dismissal of FDCPA claims as time-barred and noting that no FDCPA violations could have occurred after the defendant ceased reporting and stopped servicing the delinquent loan); Ramos, 2016 WL 6434423 (same).

Applying the FDCPA statute of limitations and applicable case law here, the Court concludes that Plaintiff's FDCPA claims are untimely on their face. Even assuming Defendant violated the FDCPA each and every time it reported the Accounts to the CRAs, Plaintiff's allegations and credit reports demonstrate that the Accounts were marked as closed as of early 2018 and never again reported after mid-2018. Plaintiff therefore had until mid-2019 to file her claims alleging Defendant's false credit reporting, but she did not file the instant complaint until over one year later, on September 18, 2020. Put differently, Plaintiff filed her complaint in 2020, which means that Plaintiff is time-barred from asserting claims of FDCPA violations that occurred prior to September 2019. Because Plaintiff has not alleged that Defendant credit reported the Accounts at any time after mid-2018, she has failed to allege any timely claims. Accordingly, Plaintiff's FDCPA claims are facially untimely.[6]

---

[6] Courts have construed claims similar to those alleged by Plaintiff, i.e., improper credit reporting, as falling squarely within the ambit of § 1692e(8). See, e.g., Foster v. AFNI, Inc., No. 2:18-cv-12340, 2020 WL 1531651, at *4 (E.D. Mich. Mar. 31, 2020). As one court has noted, "[b]ecause reporting a debt to a [CRA] can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can

Plaintiff's arguments to the contrary are unavailing.  Plaintiff argues that Defendant had a continuing duty to correct the tradelines to reflect "paid by insurance" and, failing to do so, violated the FDCPA every time a CRA generated a credit report in which the tradelines appeared.  (Doc. No. 8 at 8-9, 11-12; Doc. No. 1 ¶¶ 21, 29, 54, 87, 122, 159.)[7]  Plaintiff provides no support for this argument and instead cites to <u>Bender v. Elmore & Throop, P.C.</u>, 963 F.3d 403, 407 (4th Cir. 2020), and several other cases that stand for the general proposition that "'a separate violation' of the FDCPA occurs 'every time' an improper communication, threat, or misrepresentation is made."  <u>See id.</u>; (Doc. No. 8 at 7).  Nowhere in that general proposition, nor in the facts of those cases, is it suggested that a furnisher violates the FDCPA every time a CRA generates a credit report; indeed, the defendants in those cases were alleged to have made affirmative communications or misrepresentations <u>within</u> the FDCPA's one-year limitations period, unlike in the instant case.  <u>See e.g.</u>, <u>Bender,</u> 963 F.3d at 407 (phone call and letters within limitations period); <u>Demarais v. Gurstel Chargo, P.A.</u>, 869 F.3d 685, 693 (8th Cir. 2017) (threats); <u>Ramos</u>, 2016 WL 6434423, at *8 (credit reporting); <u>Devine v. Nationstar Mortg. LLC,</u>

_____

subject a debt collector to liability under the FDCPA."  <u>See</u> <u>Sullivan v. Equifax, Inc.</u>, No. 01-cv-4336, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002).  While Plaintiff also invokes subsections (2)(A) and (10) of § 1692e, it is not entirely clear whether Plaintiff's allegations give rise to claims thereunder.  Regardless, Plaintiff has not provided any case law to support that subsections (2)(A) and (10) should be treated any differently in evaluating the applicability of the FDCPA's one-year statute of limitations.

[7] In her reply, Plaintiff appears to walk back some of the anticipatory arguments she raised in her complaint.  Most notably, in her complaint, Plaintiff strenuously argued that her FDCPA claims are both facially timely and timely under principles of an "equitable, fraud-specific discovery rule."  (Doc. No 1.)  Plaintiff's reply centers almost exclusively on the arguments relating the fraud-specific discovery rule.  (Doc. No. 8.)  Additionally, Plaintiff's supplemental brief presents internally inconsistent arguments.  In that document, Plaintiff expressly disclaims any reliance on § 1681s-2(a) as a basis for her claims (Doc. No. 10-1 at 3), only to later refute one of Defendant's arguments by responding, "[a] furnisher's first duty is simple: A furnisher must report accurate consumer information to the CRAs" under § 1681s-2(a)(1)(A) (<u>id.</u> at 6).  As the Court noted <u>supra</u>, it has construed Plaintiff's claims as broadly as her complaint will permit, as the extent to which she advances certain claims is unclear.

No. 15-cv-1361, 2015 WL 6555424, at *5 (E.D. Pa. Oct. 28, 2015) (false representations).

Moreover, courts have declined to construe the FDCPA as imposing an "affirmative duty" on collection furnishers to correct or modify previously reported information.  For example, in Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008), the court rejected the plaintiff's argument that the furnisher-defendants violated § 1692e(8) by failing to report that the plaintiff had disputed the debt.  See id.  In doing so, the court noted: "if a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt."  See Wilhelm, 519 F.3d at 418 (emphasis in original).   Otherwise, furnishers do not have an affirmative duty to "disclose [to a CRA] that [the consumer-plaintiff] had disputed the debt."  Id. (citing FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988) (stating that, "[w]hen a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported")).  Applying the same rationale here, the Court cannot accept Plaintiff's contention that Defendant violated the FDCPA on "a regular basis" by failing "to verify and correct" the tradelines.  As one court observed, "[j]ust because the [tradelines] appear[ed] on the reports does not mean that [Defendant] was continuing to provide that information."  See Hernandez v. Ditech Fin., LLC, No. 17-cv-4294, 2019 WL 856406, at *6 (C.D. Cal. Feb. 1, 2019), aff'd sub nom. Hernandez, 2020 WL 6743105.

Further underscoring the Court's reasoning is the fact that the United States Court of Appeals for the Third Circuit has instructed that an accrual date must be "fixed by objective and visible standards, one which is easy to determine, ascertainable by both parties, and may be easily applied."  See Glover v. F.D.I.C., 698 F.3d 139, 150 (3d Cir. 2012) (internal quotation marks omitted).  Taking Plaintiff's numerous arguments to their logical conclusions, her FDCPA

11

claims accrued in 2017 and early 2018, throughout 2018 and early 2019, again in October 2019, and again in November 2019.  These arguments demonstrate that the framework Plaintiff urges the Court to adopt would only serve to insert confusion and uncertainty into an already established area of the law.  For example, Plaintiff asserts that her FDCPA claims continued to accrue during the period that Defendant either knew, or at some point discovered, the allegedly erroneously tradelines, but nevertheless failed to correct them.  But an accrual date based on when a defendant "learns that his conduct violates the FDCPA," despite certain internal procedures, does not provide an easily determinable or ascertainable date because it requires "qualitative assessments" concerning when the defendant "should have learned of the violation." See Glover, 698 F.3d at 150 (emphasis in original).  The FDCPA is generally a strict liability statute: a furnisher either correctly credit reports information, or incorrectly credit reports information, and a consumer may bring a claim for incorrect or inaccurate reporting regardless of the furnisher's state of mind.  See id.

Plaintiff also appears to argue that Defendant's deletion of the tradelines was part of a larger course of conduct involving improper credit reporting, and that her claims therefore did not accrue until late 2019.  (Doc. No. 1 ¶¶ 6, 29, 54, 159, 211.)  However, as the Court has already noted, violations of the FDCPA give rise to separate statutes of limitations that must be analyzed independently.  See Solomon, 395 F. App'x at 497.  The limitations periods for all Plaintiff's time-barred claims have run, and Plaintiff cannot revive them based on Defendant's subsequent conduct in deleting the tradelines.  As to the allegations concerning tradeline deletion, they alone do not state a claim for an FDCPA violation.  Plaintiff has not cited, nor has the Court found, any authority supporting her contention that a furnisher's deletion of a tradeline

for a closed account can violate the FDCPA.[8]  Nor do Plaintiff's allegations support the elements of §§ 1692e or 1692f, both of which prohibit furnishers from using certain representations or means in connection with the collection of debt.  See id. §§ 1692e, 1692f.  By the time Defendant deleted the tradelines, the Accounts had been closed and unreported for over one year, and the debt that sparked the events giving rise to this claim had been long paid off.  No reading of Plaintiff's allegations plausibly supports her conclusory assertion that Defendant deleted the tradelines in connection with the collection or attempt to collect any debt.  Even if she could allege as such, Plaintiff has not alleged any injuries stemming from the tradeline deletion itself, independent of any other alleged misconduct.

Finally, Plaintiff invokes a fraud-specific discovery rule according to which the statute of limitations did not begin to run until she discovered Defendant's tradelines in her credit reports in late 2019.  (Doc. No. 8 at 6-11.)  In Rotkiske, the United States Supreme Court acknowledged the potential application of an "equitable, fraud-specific discovery rule" in the context of FDCPA claims.  See 140 S. Ct. at 361.[9]  As Justice Ginsberg explained in her partial dissenting opinion, "the ordinarily applicable time trigger [for commencement of the FDCPA statute of limitations period] does not apply when fraud on the [debt collector]'s part accounts for the debtor's failure

---

[8] It is difficult to envision circumstances in which a furnisher's deletion of a tradeline can be fairly construed as a "false, deceptive, or misleading representation or means" or an "unfair or unconscionable means," much less a representation or means used to collect or attempt to "collect a debt."  See §§ 1692e, 1692f.  Additionally, as to Plaintiff's assertion that Defendant was required to use Metro 2 special comment code "BP" rather than delete the tradelines, courts considering similar arguments have rejected "the proposition that a debt collector's failure to comply with industry practices . . . equate[s] to a violation of the law."  See Dash v. Midland Funding LLC, No. 8:16-cv-2128, 2017 WL 841116, at *3 (M.D. Fla. Mar. 3, 2017) (citing cases standing for same proposition in the FCRA context).

[9] Though that language was dicta, in a concurring opinion, Justice Sotomayor stated, "[n]othing in today's decision prevents parties from invoking that well-settled doctrine."  See Rotkiske, 140 S. Ct. at 362.

to sue within one year of the [debt collector]'s violation." See id. at 362. Plaintiff argues for the application of that principle based on her allegations that Defendant knowingly made false, deceptive, and misleading misrepresentations concerning the tradelines "[i]n order to circumvent [its] FDCPA responsibilities" and conceal the false credit reporting from the CRAs and Plaintiff. (Doc. No. 8 at 8-10.)[10]

Plaintiff's argument is unavailing because, even assuming that Defendant knowingly misreported the Accounts in order to evade detection for noncompliance with Metro 2, nothing Defendant did "account[ed] for [Plaintiff's] failure" to commence a timely FDCPA action. See Rotkiske, 140 S. Ct. at 361 (Ginsburg, J., concurring). Plaintiff alleges that she was denied credit in December 2018, and that the denial was due to the tradelines, but she offers no explanation as to why she did not obtain her credit reports until September 2019 or why she did not commence this action until September 2020. Because Plaintiff has provided no other basis for tolling or any other equity-based doctrines, her claims are time-barred. The Court will therefore grant Defendant's motion to dismiss Plaintiff's FDCPA claims.

**B.      Plaintiff's FCRA Claims**

The FCRA "created a regulatory framework governing consumer credit reporting" that "was crafted to protect consumers from the transmission of inaccurate information about them,

---

[10] Plaintiff presses a variation of this argument, asserting that Defendant's "last opportunity to comply" with the FDCPA was in response to receipt of her disputes from the CRAs. (Doc. No. 8 at 7-8.) Superficially, this argument is not without support, "as some courts have determined that the FDCPA's statute of limitations begins to run on the date of the debt collector's last opportunity to comply with the Act[.]" See Glover, 698 F.3d at 149-50 (internal quotation marks omitted) (citing cases from the Eighth and Ninth Circuit Courts of Appeals). However, the courts that so determined did so in holding that the FDCPA limitations period begins to run on date on which a debt collector mails a harassing letter in violation of the Act, or based on similar allegations of mailings that purportedly violate the FCPA, see, e.g., Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), and the Third Circuit has held that the "premise for such decisions" is lacking in other FDCPA contexts, see Glover, 698 F.3d at 150.

and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  See Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014) (internal quotation marks omitted).  Generally, FCRA "only applies to CRAs," and only the Government may bring a claim against a CRA for FCRA violations.  See Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 247 (3d Cir. 2012); SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011).  The one exception is § 1681s-2(b), which "can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."  See SimmsParris, 652 F.3d at 358.  Section 1681s-2(b) "imposes certain duties on a furnisher[] who has been notified by a [CRA]," pursuant to § 1681i(a)(2)(B), "that a consumer has disputed information furnished by that furnisher[]."[11]  See Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 90 (3d Cir. 2017) (emphasis added).  Relevant here, a furnisher must investigate credit information after receiving a consumer's dispute pursuant to § 1681i(a)(2).  See id. § 1681s-2(b)(1)(a).  If the disputed information is "inaccurate or incomplete," the furnisher must "promptly" modify, delete, or "permanently block the reporting of" that information.  See id. § 1681s-2(b)(1)(E)(i)-(iii).

Moving to dismiss Plaintiff's FCRA claims, Defendant argues that Plaintiff's allegations do not give rise to a private right of action for damages and fail to state a claim upon which relief can be granted.  (Doc. Nos. 7 at 5-7, 9 at 7-11.)  In response, Plaintiff submits that she has pleaded facially sufficient claims for FCRA violations, drawing support from cases such as Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 618 (6th Cir. 2012), where the court "conclude[d] that FCRA expressly creates a private right of action against a furnisher who fails

---

[11]  Section 1681i(a)(2) requires that CRAs, upon receiving notice of a consumer's dispute, notify the furnisher of the item of disputed information.  See id. § 1681i(a)(2)(A).

to satisfy one of five duties identified in § 1681s-2(b)," <u>see</u> <u>id.</u>, and <u>Pittman v. Experian Info.</u>
<u>Sols., Inc.</u>, 901 F.3d 619, 629 (6th Cir. 2018), where the court stated, "[w]e agree that a threshold
showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under §
1681s-2(b)," <u>see</u> <u>id.</u>; (Doc. No. 8 at 11).

 Given the text of the FCRA and controlling case law, the Court concludes that Plaintiff
has failed to state a claim for violation of the FCRA.  Plaintiff's allegations concerning
Defendant's conduct from 2017 until November 2019 – including that Defendant continually
failed to investigate its alleged misreporting of the tradelines as "paid collection debt" – do not
state a claim for relief under the FCRA.  The duties imposed by § 1681s-2(b) "are triggered only
after a furnisher of information receives notice from a [CRA] about a dispute."  <u>See</u> <u>Harris</u>, 696
F. App'x at 91; <u>Eades v. Wetzel</u>, No. 19-3821, 2021 WL 287752, at *1 (3d Cir. Jan. 28, 2021)
(affirming the dismissal of an FCRA claim, noting that a consumer cannot maintain a § 1681s-
2(b) claim based on allegations of a furnisher's pre-notice conduct) (citing <u>SimmsParris</u>, 652
F.3d at 358).  To the extent Plaintiff argues to the contrary, her arguments are baseless.  <u>See</u> <u>id.</u>
Further, the only affirmative conduct allegedly taken by Defendant after mid-2018 is its act in
deleting the tradelines in response to Plaintiff's disputes, but tradeline deletion is one of the three
expressly authorized courses of action that a furnisher <u>must</u> take upon discovering inaccurate or
incomplete information following a dispute, <u>see</u> <u>id.</u> § 1681s-2(b)(1)(E)(i)-(iii), and neither the
Settlement Agreement nor the FCRA prohibit a furnisher from deleting the tradelines for closed
accounts in response to a dispute.

 Regarding the Settlement Agreement, as one court has noted, "[t]he 'FCRA does not
mandate compliance with Metro 2 or any other particular set of industry standards.'"  <u>See</u> <u>Smith</u>
<u>v. Nissan Motor Acceptance Corp.</u>, No. 1:18-cv-5473, 2020 WL 6293456, at *6 (N.D. Ga. Jan.

3, 2020) (quoting <u>Burrows v. Experian Info. Sols., Inc.</u>, 16-cv-06356, 2017 WL 1046973, at *21-

22 (N.D. Cal. Mar. 20, 2017) (citing <u>Gibson v. Equifax Info. Servs.</u>, LLC, No. 5:18-cv-00465,

2019 WL 4731957, at *3 (M.D. Ga. July 2, 2019) (noting that industry standards for consumer

data are "not the law of the land")), <u>report and recommendation adopted</u>, No. 1:18-cv-5473, 2020

WL 6298107 (N.D. Ga. Jan. 22, 2020).  As such, when assessing the sufficiency of FCRA claims

based on allegations of a furnisher's noncompliance with Metro 2, courts have been reluctant to

recognize a cause of action.  <u>See, e.g.</u>, <u>Calvillo v. Experian Info. Sols., Inc.</u>, No. 2:19-cv-00277,

2020 WL 1549574, at *3 (D. Nev. Apr. 1, 2020) (rejecting the "contention . . . that failure to

comply with Metro 2 reporting requirements is <u>per se</u> misleading or patently incorrect for FCRA

purposes"); <u>Dash v. Midland Funding LLC</u>, No. 8:16-cv-2128, 2017 WL 841116, at *3 (M.D.

Fla. Mar. 3, 2017) (holding that a "debt collector's failure to comply with industry practices does

not equate to a violation of the law").

Plaintiff heavily relies on <u>Wharram v. Credit Servs. Inc.</u>, No. 02-cv-4853, 2004 WL

1052970 (D. Minn. Mar. 12, 2004).  (Doc. No. 10-1 at 5-6.)  Wharram obtained a loan from a

bank, which later informed a CRA that the loan was delinquent, though it was not.  <u>See</u>

<u>Wharram</u>, 2004 WL 1052970, at *1.  Upon receiving Wharram's dispute of the delinquency, the

CRA deleted the "entire" tradeline for the loan, including "positive credit history," after

determining that the status of the loan account was no longer verifiable.  <u>See id.</u>  Wharram

brought suit under 15 U.S.C. § 1681e(b), asserting, <u>inter alia</u>, that by deleting his positive credit

history, the CRA failed "to assure maximum possible accuracy of [his credit] information."  <u>See</u>

<u>id.</u> at *2 (internal quotation marks omitted) (quoting 15 U.S.C. § 1681e(b)).  The court denied

the CRA summary judgment, finding that Wharram had made a sufficient showing concerning

his claim pursuant to § 1681e(b) (requiring CRAs to follow "reasonable procedures to assure

17

maximum possible accuracy of the information" in a credit report).  See id. at *3.

Wharram is inapposite for two principal reasons.  First, Wharram involved § 1681e(b), which provides for a CRA's duty to assure the accuracy of tradelines, whereas the instant case concerns the duties of a furnisher under § 1681s-2(b) upon receipt of a consumer's dispute from a CRA.  Second, while the bank in Wharram deleted a tradeline that contained "positive credit history," the tradelines at issue here contained only negative information (that the Accounts had been placed in collection, and that Defendant marked the Accounts as paid collection debt upon closing them).  Accordingly, even if § 1681e(b) applied to furnishers such as Defendant, the facts alleged by Plaintiff would fail to state a claim for relief under Wharram.  See § 1681e(b). In fact, the FCRA already imposes a duty upon furnishers, "[u]nder 15 U.S.C. § 1681s-2(a), . . . to provide accurate information," but violations of that duty, as already discussed, may only be enforced by the Government.  See SimmsParris, 652 F.3d at 357-358.  Plaintiff essentially urges an end-run around the plain terms of the statute itself, a position the Court cannot adopt.  Thus, the Court will grant Defendant's motion to dismiss Plaintiff's FCRA claims.

### C.    Plaintiff's Negligence Claims

Federal district courts may exercise supplemental jurisdiction over state law claims where they are "so related" to the federal claims that "they form part of the same case or controversy." See 28 U.S.C. § 1367(a).  However, when the federal claims have all been dismissed, the district court "may decline to exercise supplemental jurisdiction."  See 28 U.S.C. § 1367(c)(3).  The Third Circuit has stated that, in general, once the federal claims in an action have been dismissed, the district court "should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances."  See Angeloni v. Diocese of Scranton, 135 F. App'x 510, 514-15 (3d Cir. 2005) (quoting Tully v. Mott Supermarkets, Inc.,

540 F.2d 187, 196 (3d Cir. 1976)).  Because the Court finds no extraordinary circumstances in this case to warrant the continued exercise of supplemental jurisdiction, it will dismiss Plaintiff's state law negligence claims for lack of jurisdiction without prejudice to Plaintiff's right to file such claims in state court.

      **D.**    **Leave to Amend**

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  Here, Plaintiff's FDCPA claims are time-barred, and permitting amendment as to those claims would therefore be futile.  Additionally, Plaintiff's allegations do not state a claim for relief under the only FCRA provision under which she can bring a private action.  In the Court's view, amendment would be futile as to that claim because Defendant's deletion of the tradelines was consistent with its obligations and duties under § 1681s-2(b) and did not itself negatively impact Plaintiff's creditworthiness.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to file a supplemental brief (Doc. No. 10) in opposition to Defendant's motion to dismiss and deem her proposed supplemental brief (Doc. No. 10-1) as filed.  The Court will grant Defendant's motion to dismiss (Doc. No. 5) and dismiss this action with prejudice.  An appropriate Order follows.