# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNIKEN U. DAVENPORT,** | : | |
|     **Plaintiff** | : | No. 1:20-cv-01700 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **CAPIO PARTNERS LLC, et al.,** | : | |
|     **Defendant** | : | |

## MEMORANDUM

In this action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. §§ 1681-1681x, Plaintiff Anniken U. Davenport ("Plaintiff") moves for reconsideration (Doc. No. 22) of the April 28, 2021 Order (Doc. No. 21) by which the Court dismissed her complaint (Doc. No. 1) with prejudice for untimeliness and failure to state a claim upon which relief can be granted. Having been fully briefed (Doc. Nos. 23-25), Plaintiff's motion is ripe for disposition. For the reasons that follow, the Court will deny the motion.

## I.     BACKGROUND

Plaintiff commenced this action in September 2020, alleging that Defendant Capio Partners LLC ("Defendant")—a debt collector—falsely reported two of her medical billing accounts ("Accounts") as medical collection debt to the Experian and TransUnion Credit Reporting Agencies ("CRAs"). (Doc. No. 1.) Defendant's reporting of the Accounts resulted in tradelines[1] that appeared on Plaintiff's Experian and TransUnion credit reports from late 2017

---

[1] "A tradeline is information about a consumer account that is sent, generally on a regular basis, to a [CRA]. Tradelines contain data such as account balance, payment history, and status of the account." See Consumer Financial Protection Bureau, Market Snapshot: Third-Party Debt Collections Tradeline Reporting (July 18, 2019), https://www.consumerfinance.gov/data-research/research-reports/market-snapshot-third-party-debt-collections-tradeline-reporting/.

until November 2019.  (Id.)  Pertinent to the instant motion, Plaintiff's September 2019 Experian credit report reflects "Tradeline 1416," which relates to one of the two Accounts that Defendant reported to Experian.  Tradeline 1416 indicated that: (1) Defendant reported the Account corresponding to Tradeline 1416 as unpaid collection debt from late 2017 until early 2018; (2) Defendant identified the Account as "Paid, Closed," using special comment code "CLS" for "[c]losed," as of March 2018; and (3) Defendant did not credit report the Account at any point thereafter.  (Doc. No. 1-2 at 3.)

In her complaint, Plaintiff alleged that Defendant violated the FDCPA by reporting the Accounts as unpaid collection debt, knowing that they had been paid by insurance, to the Experian and TransUnion CRAs from late 2017 until early 2018.  (Id. ¶¶ 44, 104, 129.)  Upon closing the Accounts in early 2018, Defendant allegedly reported them as "paid collection medical debt" (id. ¶¶ 38, 48-50, 104) and "did not actively credit report [the Accounts at] any point after mid-2018," or otherwise attempt to correct the false reporting (id. ¶¶ 7, 107, 110).  As to her FCRA claims, Plaintiff maintained, inter alia, that Defendant failed to: (1) conduct a reasonable investigation in response to her disputes; (2) provide complete and accurate information to the CRAs; (3) inform the CRAs of the dates of first delinquencies of the Accounts; (4) "employ and follow reasonable procedures to assure maximum possible accuracy of the information provided to the [CRAs]"; and (5) "comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1861s-2(b)."  (Id. ¶ 228.)

In October 2020, Defendant filed a motion to dismiss, arguing that Plaintiff's FDCPA claims were untimely, and that her FCRA claims failed to state a claim upon which relief can be granted.  (Doc. No. 5.)  The Court granted Defendant's motion in its entirety.  (Doc. Nos. 20-21.)  The Court determined that Plaintiff's FDCPA claims, which are subject to a one-year statute of

limitations, were untimely.  (Id. at 7-14.)  The claims were untimely because, according to Plaintiff's allegations, Defendant did not actively report the Accounts at any point after March 2018, over two years prior to her commencement of this action in September 2020.  (Id.)  As to Plaintiff's FCRA claims, the Court found that Defendant had failed to state a claim for relief, as Defendant instructed the CRAs to delete Tradeline 1416 in response to Plaintiff's disputes of the inaccurate credit reporting.  (Id. at 14-18.)

Plaintiff filed the instant motion for reconsideration on May 11, 2021, four days after Experian sent her an Automated Credit Dispute Verification form ("ACDV") relating to her November 2019 dispute of Tradeline 1416.  (Doc. No. 23 at 2.)  An ACDV is a "form that is used by [CRAs] and collection agencies . . . to respond to each other regarding a consumer credit history dispute."  (Id. at 2 n.1.)[2]  Plaintiff asserts that the ACDV constitutes newly discovered evidence demonstrating that her FDCPA claims are timely and that her FCRA claims have merit.  Regarding her FDCPA claims, Plaintiff argues that the "discrepancy between" her September 2019 Experian credit report (which reflects Tradeline 1416 as "Paid, Closed") and the November 2019 ACDV (which reflects Tradeline 1416 as a "paid collection account") "conclusively demonstrates that credit reporting occurred after September 24, 2019."  (Id. at 3.)  Because Plaintiff filed this claim within one year of November 2019, she contends that her allegations state timely FDCPA claims.

As to Plaintiff's FCRA claims, she asserts that the ACDV generated by Experian proves that Defendant conducted two separate investigations upon being notified of Plaintiff's dispute,

---

[2] As one court in this circuit has explained, "[a]n ACDV is an automated communication from [the CRA] to the data furnisher."  See Schweitzer v. Equifax Info. Servs. LLC, No. 08-cv-478, 2010 WL 3809891, at *4 (W.D. Pa. Sept. 21, 2010).  "Once the data furnisher receives the ACDV it performs its own investigation and sends the ACDV back to [the CRA] to verify, modify, or delete the contested information."  Id.

"[a]t least one [of which] was not reasonable." (Id. at 5.) She asserts that she submitted a dispute letter to Defendant on November 12, 2019, in response to which, on November 21, 2019, Defendant wrote to her indicating that the Accounts had been "placed with [] Defendant in error." (Id.) Defendant's letter further stated: "If your account was reported to credit reporting agencies, they will be notified of this change in your account status." (Id.) Plaintiff alleges that Defendant then instructed Experian to delete Tradeline 1416. (Id.) Plaintiff asserts that Defendant must have conducted two investigations concerning Tradeline 1416: (1) an initial investigation, conducted in response to Plaintiff's pre-ACDV notification of her dispute, resulting in a determination that the Accounts had been placed with Defendant in error; and (2) a second investigation, conducted in response to the ACDV, resulting in a determination that Tradeline 1416 "was either incomplete or inaccurate because [] Defendant requested [that] Tradeline [1416] . . . be deleted." (Id. at 5.)[3] Based on these contentions, Plaintiff submits that she has stated a claim for relief under the FCRA.

## II.    LEGAL STANDARD

Motions for reconsideration permit a party to move to alter or amend a judgment when necessary "to correct manifest errors of law or fact or to present newly discovered evidence." See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Such motions "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent

---

[3] Plaintiff's contentions are not entirely clear. According to Plaintiff, Defendant initially determined that the Account had been placed with Defendant in error (the "first" investigation)—in which case Defendant would have reported the Account as paid by insurance—but then deleted the Account following another investigation (the "second" investigation), which led Defendant to conclude that Tradeline 1416 was incomplete or accurate. Plaintiff also appears to assert that Defendant misled the Court by asserting, in response to her motion to dismiss, that Defendant had reported Tradeline 1416 as a "Paid, Closed." (Id.)

manifest injustice." See Holsworth v. Berg, 322 F. App'x 143, 146 (3d Cir. 2009) (quoting N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  A motion for reconsideration is not an appropriate mechanism to "attempt to convince the [C]ourt to rethink a decision it has already made."  See Williams v. Standard First Ins. Co., 892 F. Supp. 2d 615, 624 (M.D. Pa. 2012) (citation omitted).  Nor may it be used to "raise new arguments or present evidence that could have been raised prior to the entry of judgment."  See Coulter v. Unknown Prob. Officer, No. 12-cv-2067, 2013 WL 3863938, at *2 (M.D. Pa. July 24, 2013) (citation omitted), aff'd, 562 F. App'x 87 (3d Cir. 2014).  Motions for reconsideration are to be granted sparingly.  See id.

## III. DISCUSSION

Plaintiff argues that the ACDV constitutes "new evidence not available previously," see Holsworth, 322 F. App'x 146, and Defendant does not argue otherwise.  The Court will presume that the ACDV qualifies as newly discovered evidence because, even if it is, the ACDV does not support her claims.  The Court will address Plaintiff's arguments in turn.

### A. Plaintiff's FDCPA Claims

To state a cause of action of action under the FDCPA, a plaintiff must allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  See Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014).  "[A]bsent the application of an equitable doctrine, the [one-year] statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."  See Rotkiske v. Klemm, 140 S. Ct. 355, 358 (2019); see id. at 360 (noting that "the language [in §

5

1692k(d)] unambiguously sets the date of the violation as the event that starts the one-year limitations period"). An FDCPA violation based on false or inaccurate credit reporting generally occurs on the date on which the debt collector reports the debt to a CRA. See, e.g., Hernandez v. Specialized Loan Servicing LLC, No. 19-55163, 2020 WL 6743105, at *1 (9th Cir. Nov. 17, 2020) (affirming the dismissal of FDCPA claims as time-barred, and noting that no FDCPA violations could have occurred after the defendant ceased reporting and stopped servicing the delinquent loan); Ramos, 2016 WL 6434423 (same).

Having considered Plaintiff's motion, the ACDV, the parties' arguments, and the applicable law, the Court concludes that, even if reconsideration is warranted, there is no basis to disturb the Court's dismissal of Plaintiff's FDCPA claims. At the outset, the Court notes that all of Plaintiff's claims concerning credit reporting that occurred in 2017 and early 2018 are time-barred regardless of the ACDV's contents. Plaintiff's arguments to the contrary are unavailing for same the reasons set forth in the Court's Memorandum granting Defendant's motion to dismiss. (Doc. No. 20 at 8-9); see Hernandez, 2020 WL 6743105, at *1. Further, contrary to Plaintiff's contentions, any discrepancies between Plaintiff's 2019 Experian credit report and the ACDV do not support her conclusory assertion that "credit reporting occurred" after September 2019. The ACDV shows only that Defendant reported Tradeline 1416 as in collection through February 2018 and as closed as of March 2018, which is consistent with the allegations in Plaintiff's complaint and her 2019 credit report. There is simply no indication whatsoever that Defendant credit reported on Tradeline 1416 at any point after March 2018. For that reason, Plaintiff has not stated a timely FDCPA claim.

While Plaintiff appears to contend that Defendant's November 25, 2019 response to the ACDV constituted an attempt to collect a debt under the FDCPA, the "sole reason for Defendant

to even communicate with the [CRA] was in response to Plaintiff's dispute of the debts through the [CRA]'s own dispute notification system." See McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 913 (8th Cir. 2014) (internal quotation marks omitted).  Plaintiff has not cited to any authority for the proposition that a debt collector's response to an ACDV—instructing a CRA to delete a tradeline—can constitute an attempt to collect a debt under the FDCPA.  See Gross v. Maitlin, 519 F. App'x 749, 751 (3d Cir. 2013) (noting that a "threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt'").  Courts routinely entertain FDCPA claims based on negative credit reporting, but the only negative reporting alleged by Plaintiff here occurred well before the expiration of the FDCPA limitations period.

      Plaintiff alternatively argues that the FDCPA statute of limitations did not begin to run until November 21, 2019, the date of Defendant's letter response to Plaintiff's dispute.  She clarifies this argument in her reply brief:

> There is nothing false, deceptive or misleading with [Defendant's November 21, 2019] [l]etter.  It is clear from the [l]etter that [] Defendant was going to change the account status / legal status of the debt to be in compliance with the FDCPA.  The November 25, 2019 ACDV along with the November 21, 2019 [l]etter gives the court a basis to conclude that Plaintiff's FDCPA claim [wa]s not time-barred when she filed the [c]omplaint on September 18, 2020.

(Doc. No. 25 at 3.)  Plaintiff appears to contend that Defendant violated the FDCPA by "notifying Plaintiff that the [A]ccount status will be changed" (Doc. No. 23 at 7), only to later direct Experian to delete Tradeline 1416 (id.).  Plaintiff relies on case law under which the FDCPA limitations period begins to run on the date a "collection letter is mailed," i.e., the "last opportunity to comply with FDCPA."  See, e.g., Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (emphasis added).  She submits that Defendant's November 21, 2019 letter represented

Defendant's "last opportunity" to comply with the FDCPA.[4]

This line of argument is unavailing. As an initial matter, Plaintiff disclaims any contention that Defendant's November 21, 2019 letter was itself false, deceptive, or misleading. She therefore cannot rely on that letter to state a claim under the FDCPA, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." See 15 U.S.C. § 1692e. To the extent Plaintiff argues that Defendant's act of sending the letter marked the conclusion of a course of false, deceptive, or misleading conduct beginning with the 2017 and 2018 credit reporting, as the Court noted in dismissing Plaintiff's FDCPA claims, violations of the FDCPA give rise to separate statutes of limitations that must be analyzed independently. (Doc. No. 20 at 12 (citing Solomon v. HSBC Mortg. Corp., 395 F. App'x 494, 497 (10th Cir. 2010) (noting that each "violation[] of the FDCPA" triggers a new and separate limitations period for that particular violation")).) Those claims cannot be revived. The only other representations alleged by Plaintiff are those that Defendant made in response to Experian's ACDV, which, as the Court already held, supra, do not give rise to an actionable FDCPA claim. There being no other basis to conclude that Plaintiff's allegations and the ACDV give rise to a timely FDCPA credit reporting claim, the Court will adhere to its dismissal of Plaintiff's FDCPA claims.

    **B.**    **Plaintiff's FCRA Claims**

The FCRA "created a regulatory framework governing consumer credit reporting" that

---

[4] Plaintiff does not clearly set out what steps she believes Defendant should have taken in response to her dispute. In her complaint, Plaintiff argued that Defendant was obligated to reclassify Tradeline 1416 as "paid by insurance." The Court rejected that argument given that "tradeline deletion is one of the three expressly authorized courses of action that a furnisher must take upon discovering inaccurate or incomplete information following a dispute." (Doc. No. 20 at 16 (citing 15 U.S.C. § 1681s-2(b)(1)(E)(i)-(iii).)

"was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." See Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014) (internal quotation marks omitted).  Generally, the FCRA "only applies to CRAs" and can only be enforced by the Government.  See Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 247 (3d Cir. 2012); SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011).  The exception is § 1681s-2(b), which "can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."  See SimmsParris, 652 F.3d at 358.  Section 1681s-2(b) "imposes certain duties on a furnisher[] who has been notified by a [CRA]," pursuant to § 1681i(a)(2)(B), "that a consumer has disputed information furnished by that furnisher[.]"[5] See Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 90 (3d Cir. 2017).  Relevant here, a furnisher must investigate credit information after receiving a consumer's dispute pursuant to 15 U.S.C. § 1681i(a)(2).  If the disputed information is "inaccurate or incomplete," the furnisher must "promptly" modify, delete, or "permanently block the reporting of" that information.  See id. § 1681s-2(b)(1)(E)(i)-(iii).

      Here, in response to the ACDV, Defendant instructed Experian to delete Tradeline 1416.  Because tradeline deletion is one of the three authorized courses of action that Defendant was required to take in response to the inaccurate credit reporting, see supra, Plaintiff has failed to state a claim for relief under the FCRA.  This is true regardless of Defendant's November 21, 2019 letter response to Plaintiff's dispute, which was sent before Defendant had received the ACDV.  "Under the FCRA, a furnisher's statutory obligations are triggered 'only after the

---

[5] Section 1681i(a)(2) requires that CRAs, upon receiving notice of a consumer's dispute, notify the furnisher of the item of disputed information.  See id. § 1681i(a)(2)(A).

9

furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the consumer' is insufficient." See Bondi v. Nationstar Mortg. LLC, 752 F. App'x 431, 432 (9th Cir. 2018) (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009)).  A "notice of a dispute 'must be given by a credit reporting agency, and cannot come directly from the consumer.'"  See Eades v. Wetzel, 841 F. App'x 489, 491 (3d Cir. 2021) (quoting SimmsParris, 652 F.3d at 358).  Applying this case law here, Defendant's duty to investigate Plaintiff's dispute did not arise until after it received the ACDV, and Defendant's November 21, 2019 letter response to Plaintiff's dispute does not give rise to liability under the FCRA.  Accordingly, the Court will affirm its dismissal of Plaintiff's FCRA claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for reconsideration (Doc. No. 22).  An appropriate Order follows.